UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAMILAH SAEED and MOHAMMED SALEH,<br><br>    Plaintiffs,<br><br>v.<br><br>ANTHONY BLINKEN, et al.,<br><br>    Defendants. | Case No. 23-cv-03249-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

## I. INTRODUCTION

In this immigration matter, Plaintiffs Gamilah Ahmed Hussein Saeed and her adult son, Mohammed Sanad Saleh, challenge the denial of Saleh's visa application. Pending before the Court is the government's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), in which it argues the doctrine of consular nonreviewability prohibits judicial review of the decision. ECF No. 20. Plaintiffs filed an Opposition (ECF No. 23) and the government filed a Reply (ECF No. 28). The Court finds this matter suitable for disposition without oral argument and **VACATES** the January 4, 2024 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** the motion.[1]

## II. BACKGROUND

Saeed is a lawful permanent resident who received her status as the widow of her United States citizen husband, Sanad Ahmed Musa Saleh, on March 22, 2012. Compl. ¶ 28, ECF No. 1. Sanad Ahmed Musa Saleh also filed a Form I-130 Petition for Alien Relative on behalf of their son, Plaintiff Mohammed Sanad Saleh, which was approved on December 8, 2009. *Id.* ¶ 29.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 7, 12.

Sanad Ahmed Musa Saleh passed away on May 25, 2010, before Saeed and their son could come to the United States. *Id.* ¶ 30. Saeed subsequently filed Form I-360 Petition for Widow and included her children in the application, including Saleh. *Id.* ¶ 31. Although Saeed brought Saleh to the interview at the U.S. Embassy in Sana'a in 2012, the consular officer refused to consider him, stating he was ineligible. *Id.* ¶ 32. Saeed and her other children all received visas at that time. *Id.*

On July 15, 2020, Saleh sought derivative benefits with the United States Department of State. *Id.* ¶ 34 & Ex. I. On February 1, 2021, Saleh was interviewed by a consular officer at the U.S. Embassy in Djibouti. *Id.* ¶¶ 11, 36. At the conclusion of the interview, the consular officer refused Saleh's visa application under 8 U.S.C. § 1201(g). *Id.* ¶ 36, Ex. K. The consular officer recommended Saleh submit DNA testing to demonstrate the claimed relationship with the principal applicant, Saeed. *Id.*

On February 24, 2021, Saleh was called into the U.S. Embassy in Djibouti for a reinterview. *Id.* ¶¶ 11, 38. Saleh brought his DNA compliance letter. *Id.* ¶ 38. When Saleh appeared, he was issued refusal paperwork alleging inadmissibility under INA Section 212(a)(6)(i) for fraud or misrepresentation in attempting to procure a visa. *Id.* ¶ 39. The consular officer stated that Saleh was married, without providing any evidence or basis for the determination or allowing Saleh an opportunity to rebut the allegation. *Id.* However, Saleh has never been married. *Id.* ¶ 40. On March 24, 2021, Saleh was informed that his visa application was denied under 8 U.S.C. § 1182(a)(6)(C)(i) for material misrepresentation. *Id.* ¶ 39 & Ex. M.

Counsel for Plaintiffs reached out to the Department of State to request a factual basis for the denial. *Id.* ¶ 41. On April 26, 2022, the Department confirmed that a consular officer refused Saleh's visa application under 8 U.S.C. § 1182(a)(6)(C)(i) (material misrepresentation), stating:

> In this case, the consular officer determined that [Saleh] willfully misrepresented his marital status in order to qualify for the IW2 category. Based on the totality of the information available, including that which [Saleh] provided during the interview, the officer made a factual finding that [Saleh] falsely claimed to be unmarried in order to qualify for an immigrant visa. Such misrepresentation was material, see 9 [Foreign Affairs Manual] 302.9-4(B)(5), as your client's true marital status disqualified him for the visa classification he sought. Therefore the our [sic] office concurs that based on the

2

> facts found by the consular officer[,] the visa applicant is ineligible under [8 U.S.C. § 1182(a)(6)(C)(i)]. Whether or not your client made a material misrepresentation is a factual determination that only a consular officer can decide, and in this case, did decide. We have reviewed the findings and found no legal error in this determination of ineligibility. Should you wish to present additional information or evidence to rebut this factual finding, please contact the consular section in Djibouti.

*Id.* ¶ 42 & Ex. O.

Plaintiffs allege a factual basis for the decision has never been provided, Saleh has never provided information to indicate he was married, and the decision "appears on its face to have been made for an illegitimate purpose as part of the Defendants' scheme to stymy and deny Yemeni visa applications." *Id.* ¶ 43-44, 46.

Plaintiffs filed the present complaint on June 29, 2023, alleging five claims: (1) violation of Plaintiffs' right to substantive due process under the Fifth Amendment, Compl. ¶¶ 100-09; (2) violation of Plaintiffs' right to procedural due process under the Fifth Amendment, *id.* ¶¶ 110-19; (3) violation of the Immigration and Nationality Act, *id.* ¶¶ 120-25; (4) violation of Plaintiffs' right to equal protection under the Fifth Amendment, *id.* ¶¶ 126-46; and (5) declaratory judgment, *id.* ¶¶ 147-51.

The government filed the present motion on October 23, 2023, arguing the doctrine of consular nonreviewability prohibits judicial review of any decision by a consular officer regarding Saleh's eligibility for an immigrant visa.

### III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a

1 defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S.
2 at 555 (quotations and citation omitted).

3       In considering a motion to dismiss, the court accepts factual allegations in the complaint as
4 true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v.*
5 *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551
6 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept a complaint's allegations as
7 true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere
8 conclusory statements." *Iqbal*, 556 U.S. at 678.

9       If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no
10 request to amend the pleading was made, unless it determines that the pleading could not possibly
11 be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
12 banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to
13 amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to
14 cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . .,
15 [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th
16 Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. The Doctrine of Consular Nonreviewability

19       Decisions regarding the admission and exclusion of foreign nationals are a "'fundamental
20 sovereign attribute exercised by the Government's political departments,'" *Trump v. Hawaii*, 585
21 U.S. __, 138 S. Ct. 2392, 2418 (2018). As such, courts have "have long recognized that
22 'ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial
23 review' . . . based on 'the recognition that the power to exclude or expel aliens, as a matter
24 affecting international relations and national security, is vested in the Executive and Legislative
25 branches of government.'" *Allen v. Milas*, 896 F.3d 1094, 1104 (9th Cir. 2018) (citations
26 omitted).

27       In *Kleindienst v. Mandel*, 408 U.S. 753 (1972), the Supreme Court "recognized a narrow
28 exception for review of constitutional claims," but "[t]he exception itself is quite narrow, requiring

4

deference to the consular officer's decision so long as 'that reason was facially legitimate and bona fide.'" *Allen*, 896 F.3d at 1105 (quoting *Mandel*, 408 U.S. at 769). Thus, if the consular officer presents a facially legitimate and bona fide reason for denial, "courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional interests at issue. *Mandel*, 408 U.S. at 770; *Kerry v. Din*, 576 U.S. 86, 102 (2015) (Kennedy, J., concurring);[2] *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008) ("As long as the reason given is facially legitimate and bona fide the decision will not be disturbed.") (citing *Mandel*, 408 U.S. at 770). However, for this narrow exception to apply, "the denial of a visa [must] implicate[ ] the constitutional rights of American citizens." *Cardenas*, 826 F.3d at 1169 (citation and internal quotation marks omitted).

In *Cardenas*, the Ninth Circuit looked to Justice Kennedy's concurrence in *Din* as establishing the standard for determining what process was "due" in the visa-denial context, describing those standards as establishing a three-part inquiry. *Id.* at 1171-72. "First, the consular officer must deny the visa under a valid statute of inadmissibility." *Id.* at 1172 (citing *Din*, 576 U.S. at 104 (consular officer's citation to § 1182(a)(3)(B) "suffices to show that the denial rested on a determination that Din's husband did not satisfy the statute's requirements," and "the Government's decision to exclude an alien it determines does not satisfy one or more of [the statutory conditions for entry] is facially legitimate under *Mandel*")). "Second, the consular officer must cite an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' or there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." *Id.* (quoting *Din*, 576 U.S. at 105). The government has the burden to establish these two elements are satisfied. *Id.* If it carries that burden, the Court must proceed to the third step, which requires it to determine whether the plaintiff has carried her "burden of proving that the [stated] reason was not bona fide by making an 'affirmative showing of bad faith on the part of the consular officer who denied [the] visa.'" *Id.* (quoting *Din*, 576 U.S. at 105).

---

[2] While there was no majority opinion, "Justice Kennedy's concurrence in *Din* is the controlling opinion." *Cardenas v. United States*, 826 F.3d 1164, 1167 (9th Cir. 2016).

### B. Application of the Doctrine

The government first argues Plaintiffs' claims fail because they cannot challenge a consular decision under the APA.[3]  Mot. at 12.  In *Allen*, the Ninth Circuit concluded that under the doctrine of consular non-reviewability, "the APA provides no avenue for review of a consular officer's adjudication of a visa on the merits."  896 F.3d at 1108.  Further, although *Mandel* provides an exception for limited review of constitutional claims, such a claim does not arise under the APA.  *See Allen*, 896 F.3d at 1108–09.  Accordingly, the doctrine of consular non-reviewability bars Plaintiffs' APA claim.  *See Chheng v. U.S. Dep't of Homeland Sec.*, 2021 WL 5233186, at *3 (N.D. Cal. Nov. 10, 2021), *aff'd*, 2023 WL 5665763 (9th Cir. Sept. 1, 2023) (dismissing complaint without leave to amend because "the doctrine of consular nonreviewability bars Plaintiffs' APA claims"); *Algzaly v. Pompeo*, 2021 WL 175875, at *7 (N.D. Cal. Jan. 19, 2021) (holding that plaintiffs cannot obtain judicial review of consular officer's visa denial under the APA).  The Court thus turns to Plaintiffs' constitutional claims.

"As a foreign national, [Saleh] does not have a constitutional right of entry and therefore cannot challenge the visa denial."  *Chheng*, 2023 WL 5665763, at *1 (citing *Mandel*, 408 U.S. at 762) ("It is clear that Mandel personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country as a nonimmigrant or otherwise."); *Khachatryan v. Blinken*, 4 F.4th 841, 849–50 (9th Cir. 2021).  Accordingly, Saleh's claims must be dismissed.

As to Saeed, even if she could allege a due process violation, she does not have a constitutionally protected liberty interest in her noncitizen adult son's visa application.  *See Khachatryan*, 4 F.4th at 862 ("[T]he [Supreme] Court has never suggested that whatever protection applies to extended-family relationships entails a constitutionally rooted expectation that one will be allowed to bring one's parents or adult children into the United States.").  In *Khachatryan*, the court held that "an adult citizen lacks a constitutionally protected liberty interest, protected by the Fifth Amendment's Due Process Clause, in the Government's decision whether to admit the citizen's unadmitted nonresident alien parent into the United States."  *Id.*  The Ninth

---

[3] The Complaint briefly mentions the APA in paragraph 148.

Circuit recently extended *Khachatryan* to include relationships between parents and non-citizen adult children, finding: "Given the reciprocal nature of the parent-child interest in familial association, we conclude that the holding of *Khachatryan* controls here." *Chheng*, 2023 WL 5665763, at *1. As such, a parent does not have "a constitutionally protected liberty interest in the denial of his non-citizen adult child's visa." *Id.*; *see also Singh v. United States Dep't of State*, 2022 WL 3357657, at *5 (C.D. Cal. Aug. 15, 2022) ("[U]nder Ninth Circuit precedent, Urmila does not have a cognizable liberty interest in having her adult stepson admitted into the United States."); *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001) ("[A] parent does not have a constitutionally-protected interest in the companionship of a child who is past minority and independent."). Therefore, as Saeed does not have a cognizable liberty interest in having her adult son admitted into the United States, her claims must also be dismissed.

## V. CONCLUSION

For the reasons stated above, the motion to dismiss is **GRANTED** without leave to amend. *See Chheng*, 2023 WL 5665763, at *2 ("Because the Chhengs cannot cure the lack of a constitutionally protected interest, dismissal without leave to amend was proper."). The Court will enter a separate judgment.

**IT IS SO ORDERED.**

Dated: December 15, 2023

THOMAS S. HIXSON
United States Magistrate Judge

7